UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:22-cv-23492

TIMOTHY THACKER,

    Plaintiff,

v.

ROYAL CARIBBEAN GROUP,

    Defendant.
_____/

**COMPLAINT FOR DAMAGES
AND DEMAND FOR TRIAL BY JURY**

Plaintiff, TIMOTHY THACKER (hereinafter "THACKER"), through undersigned counsel, sues Defendant, ROYAL CARIBBEAN GROUP, (hereinafter "ROYAL"), and demands trial by jury, stating as follows:

**PARTIES AND JURISDICTION**

1. THACKER seeks damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

2. This Court has admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333.

3. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states and/or citizens of a state and citizens or subjects of a foreign state.

4. Suit is filed in federal court because of the federal forum selection clause in the passenger contract ticket issued by ROYAL.

5. THACKER is *sui juris* and is a resident and citizen of the state of Arizona.

6. ROYAL is a citizen of the state of Florida and the nation of Liberia.

7. ROYAL is a foreign corporation who is authorized to conduct and who does conduct business in the state of Florida, who at all times material hereto was and is doing business in Miami-Dade County, Florida, and who maintains its corporate headquarters and principal place of business in Miami-Dade County, Florida.

8. ROYAL, at all times material hereto, personally and/or through an agent, in Miami-Dade County, Florida, in the Southern District of Florida:

   a. Operated, conducted, engaged in, or carried on a business venture; and/or

   b. Had an office or agency; and/or

   c. Engaged in substantial activity; and/or

   d. Committed one or more of the acts stated in Florida Statutes, §§ 48.081, 48.181 or 48.193.

9. All conditions precedent for filing and maintaining this action have been fulfilled, have been waived, or do not apply.

## DEFINITIONS AND FACTUAL ALLEGATIONS

10. Hereinafter, the phrase, the "subject area," shall include, but not be limited to, the surface that THACKER slipped on, the foreign substance on the subject surface, the subject laser tag arena, the surrounding area, the lighting in the area, and all material and effects pertaining thereto, including any anti-slip/skid material that was applied or that should have been applied, and/or other parts thereof, drains that were or should have been in the area to reduce the amount of liquid in the area, any sources of liquid in the subject area and/or the sources of the liquid involved in THACKER's incident, the area and surface's design and/or visual condition, and/or any other applied, adhesive, and/or other material.

11. At all times material hereto, ROYAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject area involved in THACKER'S incident.

12. THACKER'S incident occurred on or about October 6, 2022, while he was a fare paying passenger on ROYAL'S vessel, *the Navigator of the Seas*.

13. At all times material hereto, ROYAL owned, leased, chartered, operated, maintained, managed, and/or controlled the subject cruise ship, *the Navigator of the Seas*.

14. On or about October 6, 2022, at approximately 7:30 p.m., while he was in Studio B on *the Navigator of the Seas* and was walking to the laser tag area, THACKER slipped and fell on a foreign liquid substance/water that was on the floor that covered the ice in Studio B.

15. As a result, THACKER sustained severe injuries that include, but are not limited to, fractures to his right leg, pain, and other serious injuries which require surger(ies).

16. At all relevant times, the dangerous and/or risk creating conditions include, but are not limited to the following:

   a. The foreign substance on the subject surface, which caused the subject surface to become unreasonably slippery, and which caused THACKER to slip and fall.

   b. The floor THACKER slipped on lacked adequate slip resistant material and/or was otherwise unreasonably slippery.

   c. There were no reasonable safety measures such as reasonable places THACKER could grab in the subject area during his fall.

   d. There was unreasonable condensation on the subject surface.

   e. There was either non-existent drainage for the subject floor or any such drainage was not reasonably draining liquid from the subject area at the time of THACKER's incident.

   f. There was no rug/carpet/other similar measure on the subject surface to

prevent it from becoming slippery when wet.

g. There was inadequate lighting in the area such that the area was unreasonably dim and not properly lit, and THACKER could not see the subject foreign liquid substance/water.

h. There were unreasonable gaps in the surface that covered the ice in the area, which either made the condensation worse such that it became a dangerous slipping hazard, and/or otherwise caused or contributed to THACKER's incident.

i. Other dangerous conditions that will be revealed through discovery.

17. Each of these dangerous conditions alone was sufficient to cause THACKER'S incident and injuries, and THACKER is alleging that ROYAL was negligent as to each of these conditions in the alternative.

18. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the following:

a. Prior to his incident, THACKER's grandson fell on the subject surface prior to THACKER'S fall.

b. There was a warning given on a loudspeaker immediately before THACKER stepped on the subject surface that stated that passengers should be careful because the subject surface was "slippery down there."

c. THACKER was in Studio B for at least ten to fifteen minutes prior to his incident, and was able to see the area where he fell, but did not see any liquid being deposited on the subject surface during this time, such that THACKER infers that the foreign liquid substance/water on the subject surface existed for at least ten to fifteen minutes

    prior to his incident, such that ROYAL had a reasonable amount of time to clean it up, but failed to do so.

d. Furthermore, THACKER observed at least a couple of ROYAL crewmembers in the subject area at the time of the incident, and these crewmembers were in the immediate vicinity, such that THACKER reasonably infers that these crew members regularly used, observed, and tended to the subject area, and therefore were or should have been aware of the dangerous and/or risk-creating conditions thereof, and warned of and/or removed these conditions.

e. ROYAL participated in the installation and/or design of the subject area, or alternatively, ROYAL accepted the area with its design defects present after having been given an opportunity to inspect the ship and materials on it, including the subject surface, such that ROYAL should have known of the design defects of the subject surface and area before providing them for public use. These design defects include, but are not limited to, the dangers outlined in paragraph 16 of this complaint.

f. There are relevant safety standards/recommendations/other guidelines regarding the safety of the subject area, including, but not limited to, prohibitions and/or recommendations against the deficiencies discussed in paragraph 16 of this Complaint, and ROYAL should have known of these standards/recommendations/other guidelines because whether such standards/recommendations/other guidelines are legally required for ROYAL to comply with or not, a fact-finder is entitled to determine, if it so choses, that these standards/recommendations/other guidelines show what a reasonable cruise line should have done.

    g. ROYAL also knew or should have known of these dangerous conditions through inspecting the subject area involved in THACKER'S incident, and if it did not know of these dangerous conditions, this was because ROYAL failed to adequately inspect the subject area prior to THACKER'S incident.

    h. Previous passengers in prior cases suffered prior incidents involving other games that exposed ROYAL'S passengers to similar degrees of danger on its ships, including, but not limited to, *Goins v. Royal Caribbean Cruises, Ltd.*, No. 16-21368-CIV, 2017 WL 5891471, at *2 (S.D. Fla. June 12, 2017), *McDonnell v. Royal Caribbean Cruises Ltd.*, No. CV 16-22044-CIV, 2017 WL 3016931, at *2 (S.D. Fla. July 14, 2017), *Vollman v. Royal Caribbean Cruises Ltd.*, No. 10-20062-CIV, 2011 WL 10636189, at *1 (S.D. Fla. Mar. 16, 2011), and *Rivera v. Royal Caribbean Cruises Ltd.*, No. 15-24173-CIV, 2016 WL 7176644, at *1 (S.D. Fla. Dec. 8, 2016), aff'd, 711 F. App'x 952 (11th Cir. 2017).

    i. Moreover, ROYAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

    j. Moreover, ROYAL knew or should have known of these dangerous conditions for other reasons that will be revealed through discovery.

19. At all times relevant, the subject area was unreasonably dangerous, risk-creating, defective, improperly designed, improperly installed, and/or otherwise unsafe.

20. The subject area and the vicinity lacked adequate safety features to prevent or minimize THACKER'S incident and/or injuries.

21. These hazardous conditions were known, or should have been known, to ROYAL in the exercise of reasonable care.

22. These hazardous conditions existed for a period of time before the incident.

23. These conditions were neither open nor obvious to THACKER.

24. At all times relevant, ROYAL failed to adequately inspect the subject area and the vicinity for dangers, and ROYAL failed to adequately warn THACKER of the dangers.

25. At all times relevant, ROYAL had the ability to cure the deficiencies and to eliminate the hazards, but failed to do so.

26. At all times relevant, ROYAL failed to maintain the subject area and the vicinity in a reasonably safe condition.

27. At all times relevant, ROYAL participated in the design and/or approved the design of the subject area and the vicinity involved in THACKER'S incident.

28. At all times relevant, ROYAL participated in the installation and/or approved the installation of the subject area and the vicinity involved in THACKER'S incident.

29. The crewmembers of *the Navigator of the Seas* were in regular full-time employment of ROYAL and/or the ship, as salaried crewmembers.

30. ROYAL's crewmembers, employees, and/or agents were subject to the ship's discipline and master's orders, and ROYAL had the right to hire and fire its crewmembers, employees, and/or agents.

31. ROYAL is directly responsible and liable for their actions and the actions of its crewmembers, employees, and/or agents.

32. The crewmembers, including the medical staff, were employees and/or actual agents and/or apparent agents of ROYAL, and acted within the course and scope of their employment and/or agency agreement and/or relationship.

33. The crewmembers were represented to THACKER and the ship's passengers as employees of ROYAL through signs, documents, and/or uniforms. The crewmembers were also

paid a salary and/or hourly wage by ROYAL. ROYAL knew that the crewmembers represented themselves to be employees of ROYAL and allowed them to represent themselves as such. THACKER detrimentally relied on these representations as THACKER would not have proceeded on the subject cruise had he believed the crewmembers were not employees of ROYAL.

## COUNT I
## NEGLIGENT FAILURE TO INSPECT

34. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

35. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

36. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately inspecting the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe for the use and enjoyment of its passengers.

37. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL breached the duty of reasonable care owed to THACKER and were negligent by failing to adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 16 of the instant Complaint were present at the time of THACKER'S incident.

38. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

39. These risk-creating and/or dangerous conditions were caused by ROYAL'S failure to

adequately inspect the subject area and the vicinity to make sure the subject area and the vicinity were reasonably safe.

40. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

41. ROYAL'S negligence proximately caused THACKER great bodily harm in that, but for ROYAL'S negligence, THACKER'S injuries would not have occurred.

42. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S vacation, cruise, and transportation costs.

43. The losses are permanent and/or continuing in nature.

44. THACKER suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or

appropriate.

## COUNT II
## NEGLIGENT FAILURE TO MAINTAIN

45. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

46. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

47. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately maintaining the subject area and the vicinity.

48. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to THACKER and were negligent by failing to adequately maintain the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed paragraph 16 of the instant Complaint were present at the time of THACKER'S incident.

49. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant complaint.

50. Moreover, these risk-creating and/or dangerous conditions were caused by ROYAL'S failure to adequately maintain the subject area and the vicinity.

51. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

52. ROYAL'S negligence proximately caused THACKER great bodily harm in that, but for ROYAL'S negligence, THACKER's injuries would not have occurred.

53. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S vacation, cruise, and transportation costs.

54. The losses are permanent and/or continuing in nature.

55. THACKER has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### COUNT III
### NEGLIGENT FAILURE TO REMEDY

56. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

57. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

58. This duty includes, but is not limited to, the duty to provide its passengers reasonable care by adequately remedying the subject area and the vicinity.

59. At all times material, ROYAL, through its vessel, crew, agents, employees, staff and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to THACKER and were negligent by failing to adequately remedy the subject area and the vicinity, such that the unreasonably risk creating and/or dangerous conditions discussed in paragraph 16 of the instant Complaint were present at the time of THACKER'S incident.

60. ROYAL either knew or should have known of these risk-creating and/or dangerous conditions, due to reasons that include, but are not limited to, the reasons discussed in paragraph 18 of the instant Complaint.

61. Moreover, these risk-creating and/or dangerous conditions were caused ROYAL'S failure to adequately remedy the subject area.

62. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

63. ROYAL'S negligence proximately caused THACKER great bodily harm in that, but for ROYAL'S negligence, THACKER's injuries would not have occurred.

64. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S

vacation, cruise, and transportation costs.

65. The losses are permanent and/or continuing in nature.

66. THACKER has suffered these losses in the past and will continue to suffer such losses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT IV
## NEGLIGENT FAILURE TO WARN OF DANGEROUS CONDITION

67. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

68. At all times relevant, ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers, including THACKER.

69. Such duty includes, but is not limited to, the duty that ROYAL owes to warn passengers of any dangers that it knew or should have known were not open and obvious to THACKER.

70. Such duty also includes, but is not limited to, the duty to warn passengers of hazards, which passengers may reasonably be expected to encounter.

71. At all times material, ROYAL, through its vessel, crew, agents, employees, staff

and/or representatives, who were acting in the course and scope of their employment and/or agency with ROYAL, breached the duty of reasonable care owed to THACKER and was negligent by failing to warn THACKER of the dangerous conditions discussed in paragraph 16 of the instant Complaint.

72. Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18 of this Complaint.

73. These dangerous conditions were also created by ROYAL.

74. ROYAL failed to adequately ensure there were no dangerous conditions that passengers needed to be warned of, and/or ROYAL failed to warn THACKER despite knowing of the dangers.

75. These dangerous conditions existed for a period of time before the incident.

76. These conditions were neither open nor obvious to THACKER.

77. ROYAL'S breach was the cause in-fact of THACKER'S great bodily harm in that, but for ROYAL'S breach THACKER's injuries would not have occurred.

78. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

79. ROYAL'S breach proximately caused THACKER great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

80. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense

of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S vacation, cruise, and transportation costs.

81. The losses are permanent and/or continuing in nature.

82. THACKER has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

**COUNT V**
**NEGLIGENT DESIGN, INSTALLATION, AND/OR APPROVAL OF THE SUBJECT AREA AND THE VICINITY**

83. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

84. At all times material hereto, ROYAL owed a duty to its passengers, and in particular a duty to THACKER, not to permit dangerous conditions to be in places where they could harm passengers, such as those discussed in paragraph 16 in the instant Complaint, as well as to design and install reasonable safeguards.

85. At all times material hereto, ROYAL participated in the design process of the subject vessel by generating design specifications for the shipbuilder to follow, and to put the vessel on

which THACKER was injured into the channels of trade, and/or ROYAL approved of the subject vessel's design, including the design of the subject area and the vicinity.

86. At all times material hereto, ROYAL manufactured, designed, installed, and/or approved of *the Navigator of the Seas*, including providing specifications to the shipbuilder in the original build process, and/or during its refurbishments, and as such owed a duty to its passengers, and in particular a duty to THACKER, to design, install and/or approve of the subject area and the vicinity without any defects.

87. At all times material hereto, ROYAL through its agents and/or employees who were acting in the course and scope of their employment and/or agency with ROYAL, designed, installed, and/or approved of the subject area and the vicinity involved in THACKER'S incident, which was also in violation of the applicable industry standards/recommendations and/or other guidelines.

88. ROYAL provides design elements of the vessels to the ship builder and/or approves of design elements which include the subject area and the vicinity.

89. ROYAL maintains the contractual right to participate, review, modify, and/or reject the design plans and drawings of the vessels, including *the Navigator of the Seas*, during the new build process.

90. ROYAL has the right to enter the ship and inspect it during construction to ensure that it is being constructed in accordance with the design specifications and has a right to insist on changes when safety concerns are identified.

91. ROYAL has the right to inspect and reject design elements before taking possession of the ship.

92. However, ROYAL permitted the dangerous conditions discussed in paragraph 16 of

the instant complaint to be present in the subject area and the vicinity without correcting these design deficiencies and did not design and install reasonable safeguards.

93. Furthermore, ROYAL knew or should have known of these dangerous conditions for the reasons discussed in paragraph 18 of this Complaint.

94. The design flaws that made the subject area and the vicinity involved in THACKER'S incident unreasonably dangerous were the direct and proximate cause of THACKER'S injuries.

95. ROYAL is liable for the design flaws of the vessel, including of the subject area and the vicinity involved in THACKER'S incident, which it knew or should have known of.

96. ROYAL failed to correct and/or remedy the defective conditions, despite the fact that ROYAL knew or should have known of the danger(s).

97. ROYAL'S breach was the cause in-fact of THACKER'S great bodily harm in that, but for ROYAL'S breach THACKER's injuries would not have occurred.

98. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

99. ROYAL'S breach proximately caused THACKER great bodily harm in that the incident that occurred was a foreseeable result of ROYAL'S breach.

100. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S vacation, cruise, and transportation costs.

101. The losses are permanent and/or continuing in nature.

102. THACKER has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

## COUNT VI
## NEGLIGENCE FOR THE ACTS OF ROYAL'S CREW, STAFF, EMPLOYEES, AND/OR AGENTS, BASED ON VICARIOUS LIABILITY

103. THACKER hereby adopts and re-alleges each and every allegation in paragraphs 1 through 33, as if set forth herein.

104. ROYAL owed a duty to exercise reasonable care under the circumstances for the safety of its passengers.

105. The crewmembers who were working in and/or who were and/or should have been responsible for inspecting, maintaining, cleaning, and/or giving warnings regarding the subject area, were agents of ROYAL for the following reasons:

    a.    They were the staff and/or employees of ROYAL, or were ROYAL'S agents, apparent agents, and/or servants; and/or

    b.    These staff, employees, and/or agents were subject to the right of control by

ROYAL; and/or

c. These staff, employees, and/or agents were acting within the scope of their employment or agency; and/or

d. ROYAL acknowledged that these staff, employees, and/or agents would act on ROYAL'S behalf, and they accepted the undertaking.

106. ROYAL is vicariously liable for the acts of its staff, employees, and/or agents, as discussed in paragraph 16 of the instant complaint.

107. ROYAL'S breach was the cause in-fact of THACKER'S great bodily harm in that, but for ROYAL'S breach THACKER's injuries would not have occurred.

108. Furthermore, the subject area and the vicinity were also on a cruise ship in the water subject to numerous maritime conditions such as the ship's movement, additional wear-and-tear due to maritime conditions not necessarily present on land, waves, and other conditions unique to maritime travel, and as such were "clearly linked to nautical adventure."

109. This negligence proximately caused THACKER great bodily harm in that, but for this negligence, THACKER'S injuries would not have occurred.

110. As a result of ROYAL'S negligence, THACKER has suffered severe bodily injuries resulting in pain and suffering, disability, scarring, disfigurement, mental anguish, loss of independence, lost wages, lost earning capacity, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, and loss of the value of THACKER'S vacation, cruise, and transportation costs.

111. The losses are permanent and/or continuing in nature.

112. THACKER has suffered these losses in the past and will continue to suffer such loses in the future.

**WHEREFORE**, Plaintiff, TIMOTHY THACKER, demands judgment against Defendant, ROYAL CARIBBEAN GROUP, for damages suffered and costs incurred, as well as for damages and costs that THACKER will suffer and incur in the future, as a result of his bodily injury, pain and suffering, disability, disfigurement, scarring, mental anguish, hospitalization, medical care and treatment, nursing care and treatment, lost wages, lost earning capacity, loss of important bodily functions, loss of independence, and loss of capacity for the enjoyment of life, for all court costs, pre- and post-judgment interest, and for any and all other relief which this Court deems just or appropriate.

### DEMAND FOR JURY TRIAL

Plaintiff, TIMOTHY THACKER, demands trial by jury on all issues so triable.

**Dated:** October 26, 2022.

Respectfully submitted,

*/s/ Matthias M. Hayashi*
**Spencer M. Aronfeld, Esq.**
Florida Bar No.: 905161
aronfeld@Aronfeld.com
**Matthias M. Hayashi**
Florida Bar No.: 115973
mhayashi@aronfeld.com
**Abby H. Ivey, Esq.**
Florida Bar No.: 1002774
aivey@aronfeld.com
**ARONFELD TRIAL LAWYERS**
One Alhambra Plaza, Penthouse
Coral Gables, Florida 33134
P:      (305) 441.0440
F:      (305) 441.0198
*Attorneys for THACKER*